IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN A. MARTIN,

              Plaintiff,                 No. CIV S-03-0466 FCD JFM P

     vs.

CHERYL K. PLILER, et al,

              Defendants.          __FINDINGS & RECOMMENDATIONS__

_____/

        Plaintiff is a state prisoner proceeding pro se, seeking relief pursuant to 42 U.S.C. § 1983.  Plaintiff is an inmate at California State Prison-Sacramento (CSP-Sacramento), who filed his second amended complaint on August 20, 2004.  Plaintiff complains that defendant, Supervisor of Academic Instruction at CSP-Sacramento, violated his rights under the First Amendment to the Constitution.  Plaintiff argues that defendant unlawfully retaliated against him after he filed a grievance, ultimately causing him to lose his job in the prison.  Plaintiff seeks compensatory, general, and special damages in the amount of $250,000, unspecified punitive damages, the cost of this suit and reasonable attorneys fees, and such further relief as the court deems just and proper.

        On December 1, 2005, defendant filed a motion for summary judgment.  Plaintiff responded to defendants' motion on February 14, 2006.  Defendant filed her reply on July 19, 2006.

1   In her motion, defendant argues that plaintiff has failed to offer any evidence that

2   defendant engaged in retaliatory action in violation of plaintiff's rights.  In addition, defendant

3   states that plaintiff has not offered any evidence that defendant's actions caused plaintiff to lose

4   his job.  Defendant also argues that plaintiff is unable to establish the absence of any legitimate

5   penological purpose to the adverse action taken against him.  Finally, defendant contends that she

6   is entitled to qualified immunity because her actions did not violate a clearly established

7   constitutional right.

8       A.  <u>Summary Judgment Standards Under Rule 56</u>

9           1. Legal Standard for Summary Judgment

10  Summary judgment is appropriate when it is demonstrated that the standard set

11  forth in Federal Rule of Civil Procedure (Fed. R. Civ. P.) 56(c) is met.  "The judgment sought

12  shall be rendered forthwith if . . . there is no genuine issue as to any material fact, and . . . the

13  moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

14  Under summary judgment practice, the moving party

15      always bears the initial responsibility of informing the district court
        of the basis for its motion, and identifying those portions of "the
16      pleadings, depositions, answers to interrogatories, and admissions
        on file, together with the affidavits, if any," which it believes
17      demonstrate the absence of a genuine issue of material fact.

18  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

19  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

20  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

21  to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,

22  after adequate time for discovery and upon motion, against a party who fails to make a showing

23  sufficient to establish the existence of an element essential to that party's case, and on which that

24  party will bear the burden of proof at trial.  <u>See id.</u> at 322, 106 S. Ct. at 2552.  "[A] complete

25  failure of proof concerning an essential element of the nonmoving party's case necessarily

26  renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be

2

1  granted, "so long as whatever is before the district court demonstrates that the standard for entry

2  of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

3         If the moving party meets its initial responsibility, the burden then shifts to the

4  opposing party to establish that a genuine issue as to any material fact actually does exist.

5  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356

6  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

7  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

8  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

9  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

10  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

11  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

12  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

13  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9thCir. 1987), and that the

14  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

15  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9thCir. 1987).

16         In the endeavor to establish the existence of a factual dispute, the opposing party

17  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

18  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

19  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

20  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

21  genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

22  56(e) advisory committee's note on 1963 amendments).

23         In resolving the summary judgment motion, the court examines the pleadings,

24  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

25  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

26  477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

opposing party's obligation to produce a factual predicate from which the inference may be

drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.Cal. 1985),

aff'd, 810 F.2d 898, 902 (9thCir. 1987).  Finally, to demonstrate a genuine issue, the opposing

party "must do more than simply show that there is some metaphysical doubt as to the material

facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct.

1356 (citation omitted).

On October 22, 2004, the court advised plaintiff of the requirements for opposing

a motion pursuant to Rule 56 of the Fed. R. Civ. P..  See Rand v. Rowland, 154 F.3d 952, 960-1

(9thCir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849

F.2d 409 (9thCir. 1988).[1]

2.  Discussion

a.  Facts

Defendant is the Supervisor of Academic Instruction at CSP-Sacramento.  In this

position, defendant is responsible for overseeing the libraries, academic instruction programs,

recreation, and inmate television at CSP-Sacramento.  At all times relevant to this suit, she

occupied that position.

/////

---

[1]Defendant argues that plaintiff has not complied with the requirements for responding to a motion for summary judgment.  Specifically, defendant complains that plaintiff failed to reproduce defendant's undisputed facts and respond accordingly.  As a result, defendant contends that ascertaining the true facts as they apply to this motion is difficult.  Defendant states that this alone supports granting the motion for summary judgment.  The court disagrees.  Dismissal on this basis is not warranted in this case.  While it is true that plaintiff did not respond as required in the local rules, plaintiff demonstrated no prejudice as a result.  Indeed, plaintiff's surrebuttal was well briefed.  Furthermore, the court was able to distill the relevant facts from all of the documents in this case in order to issue its findings and recommendations.

Plaintiff started working at the CSP-Sacramento B-facility law library in 1992. After beginning as a porter, a custodian at the library with other duties as assigned, plaintiff eventually became a library law clerk. Among his duties as a law clerk, plaintiff was responsible for providing requested legal materials and other assistance to law library users. Plaintiff signed numerous statements affirming that he was aware of his duties and the consequences for failing to meet performance expectations. The last of these statements was signed on July 1, 2000.

Inmates are permitted to assist other inmates with legal matters. CAL. CODE REGS. tit.xv, § 3163. However, employees of the law library are prohibited from providing legal advice while at work. The reason for this prohibition is to reduce liability for CSP-Sacramento employees, limit the potential for disputes, and to ensure inmates have the time needed to perform their required duties. In addition, the prohibition prevents inmates from charging for services they are already obligated to perform.

On October 26, 2000, while at work, plaintiff was sent by his immediate supervisor to assist two inmates in lock down with a habeas corpus filing. Plaintiff prepared the required paperwork in pencil, giving it to Inmate Quintana to complete in pen and file on behalf of Inmate Lara. This process took approximately 20 minutes, after which plaintiff returned to the library to complete his workday.

Inmate Lara submitted his habeas filing to the prison law library for photocopying. This request was denied by the senior librarian in B-facility, Mr. McCarger, as the filing did not comply with prison requirements. The filing was returned to Inmate Lara along with the reason for its rejection.

Upon receipt of the rejection, plaintiff submitted a California Department of Corrections Form 602 (CDC 602) appealing the denial of photocopying services. This appeal, lodged on November 8, 2000, stated that plaintiff had prepared the habeas filing on behalf of Inmate Lara. Consequently, "as his attorney," plaintiff had a right to have copies made of whatever legal documents he deemed important for the prosecution of the habeas petition. (Pl.'s

1   Decl. Supp. Opp. Mot., App. H.)  According to plaintiff, the denial of photocopy services was an

2   arbitrary abuse of power by Mr. McCarger in violation of state and federal law.  Plaintiff wrote in

3   his appeal that Mr. McCarger should "back off," and that plaintiff's job was to ensure that

4   "inmates rights are not being violated in having access to the courts, and to assist them."  Id.

5          On January 3, 2001, in preparation of his response to plaintiff's CDC 602, Mr.

6   McCarger consulted with defendant and informed her that plaintiff had been told on numerous

7   occasions that he was not permitted to provide legal advocacy while at work.  On that same day,

8   defendant reported plaintiff for a serious rules violation and prepared a notice of classification

9   hearing.  Both documents were served on plaintiff two weeks later.  The order to appear before

10  the classification committee was to consider removal from the work program and, if upheld,

11  termination of plaintiff's employment as a clerk at the law library.  As support for the

12  classification hearing and removal, defendant attached a copy of a rules violation report (RVR).

13         In the RVR, defendant stated that plaintiff had compromised his position as a law

14  clerk by giving legal advice.  The rules violation cited performance as the basis for the offense.

15  According to the RVR, plaintiff had been warned on numerous occasions that the giving of legal

16  advice was against prison regulations.  As a result of "disregard[ing] the terms of his employment

17  in the library, [and] fail[ing] to follow direct orders," defendant suspended plaintiff from his

18  position as a law clerk pending the classification hearing.  Attached to the RVR upon its

19  presentation to plaintiff was a copy the CDC 602 he filed contesting denial of the habeas

20  photocopies.

21         Upon consideration of the RVR, a senior hearing officer at CSP-Sacramento

22  found plaintiff guilty on January 25, 2001, of failing to meet job expectations, CAL. CODE REGS.

23  tit.xv, § 3041(d), reducing the violation from a serious offense to an administrative violation.

24  This finding was based on the fact that plaintiff admitted to helping an inmate prepare his habeas

25  appeal.  Additional support for the ruling was found in a statement made by defendant at the

26  /////

1  RVR hearing that plaintiff had been warned about providing legal assistance to other inmates

2  while at work.

3          In his report, the hearing officer made several special notations.  In particular, the

4  hearing officer found that plaintiff did not violate any regulations by dispensing legal advice, as

5  prison regulations permit inmates to assist one another with legal matters.  Rather, the hearing

6  officer found that plaintiff misused his work time by helping an inmate prepare an appeal during

7  the time that he was supposed to be performing other assigned duties.  The hearing officer

8  specifically noted that plaintiff was not charged in the RVR for filing his CDC 602 and that any

9  appeal in that case would proceed separately.

10          And proceed it did.  On January 3, 2001, the CSP-Sacramento appeals

11  coordinator rejected plaintiff's CDC 602 appeal for the first time.  In his rejection, the appeals

12  coordinator stated that the appeal was rejected because prison regulations state that an inmate

13  may not prepare a CDC 602 appeal on behalf of another inmate.  In this case, the rejected

14  photocopy request was made by Inmate Lara; however, plaintiff filed the CDC 602 appealing that

15  rejection.  Plaintiff pursued a second appeal on January 5, 2001.  The appeals coordinator

16  rejected this appeal on the same grounds on February 2, 2005.  Plaintiff filed a third appeal on

17  February 19, 2001.  This appeal was also rejected.

18          Upon completion of the several concurrent administrative proceedings, plaintiff

19  waited for his review by the classification committee to determine whether he would retain his

20  position as a clerk at the B-facility law library.  This position was continued during an annual

21  review on May 22, 2001.  In that classification hearing, the committee noted plaintiff's RVR, yet

22  determined that he should continue with his employment.

23          On June 4, 2001, plaintiff was removed from his position as a law clerk, along

24  with all of his fellow employees in the B-facility law library, after weapons were found in the

25  library.  Plaintiff was put on administrative segregation during the investigation into the weapons

26  incident.  Plaintiff was ultimately not implicated in the weapons issue; however, plaintiff

remained on administrative segregation because of other misconduct discovered during the course of the investigation.  This additional matter concerned familiar relations with library staff, and was resolved on August 31, 2001, when the allegation against plaintiff was not substantiated.  In spite of the unsubstantiated allegations, plaintiff did not resume employment in the law library.

### b.  Retaliation for Exercise of First Amendment Rights

The Fourteenth Amendment right of access to the courts survives confinement.  Bounds v. Smith, 430 U.S. 817, 821-22, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  Punishment administered against someone exercising their right to access to the courts may violate the First Amendment.  Rizzo v. Dawson, 778 F.2d 527, 531-32 (9thCir. 1985).  Actions that chill an inmate's right to file grievances are sufficient to raise a claim of retaliation.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9thCir. 2004)

Prisoner's raising a claim of retaliation under 42 U.S.C. § 1983 must establish five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9thCir. 2005); see e.g. Resnick v. Hayes, 213 F.3d 443, 449 (9thCir. 2000); Barnett v. Centoni, 31 F.3d 813, 815-16 (9thCir. 1994).  Defendant has failed in her motion to show that no material issue of fact exists on any of these elements and that she is entitled to judgment as a matter of law.  Summary judgment is not appropriate.

### i.  Adverse Action

There is ample evidence that prison officials took adverse action against plaintiff.  An RVR was filed by defendant against plaintiff in January 2001.  In addition, defendant reported plaintiff to the classification committee and requested that he be removed from his position as a law clerk.  Finally, plaintiff was ultimately placed in administrative segregation and lost his job in the law library as a result.  While such actions may not appear severe, a particular

sanction need not be great in order to find that rights have been violated.  See Hyland v. Wonder, 972 F.2d 1129, 1135 (9thCir. 1992).  There is sufficient evidence to conclude that defendant took adverse action against plaintiff.

ii.  Retaliatory Action

A genuine issue of material fact exists with regards to the true reason why plaintiff suffered any adverse action.  While defendant contends otherwise, plaintiff has put forward credible evidence that the timing of defendant's adverse action, the nature of its enforcement, and the motivation behind it, support an inference of retaliatory intent.  There is considerable dispute between the parties on this issue that precludes summary judgment.

Plaintiff has offered multiple pieces of evidence to prove his contention of unlawful retaliation.  Some inference could be drawn by a rational fact-finder that the timing of the RVR and plaintiff's subsequent removal from the law library was the result of his filing of the CDC 602.  "Timing can properly be considered as circumstantial evidence of retaliatory intent."  Pratt v. Rowland, 65 F.3d 802, 808 (9thCir. 1995).

Defendant filed the RVR nearly six weeks after plaintiff made his CDC 602 appeal, and only after she became aware that it had been filed.  Furthermore, according to the RVR, plaintiff had been warned on numerous occasions in his seven years in the law library about giving legal advice while on duty.  However, in none of the prior occasions was plaintiff punished.  Only after filing his grievance was an RVR completed.  While the reasons for this RVR may be perfectly legitimate in light of the admissions contained in the CDC 602, its timing is suspect in light of other evidence in the record that such behavior had previously been tolerated by prison officials.

Along with the timing of the RVR, retaliatory intent is supported by additional evidence in the record.  Confusion over the true nature of plaintiff's duties leaves open a reasonable inference of unlawful retaliation.  Plaintiff's job description as a law clerk states that he will "give assistance to law library users."  (Pl.'s Decl. Supp. Opp. Mot., App. E.)   The

9

1  hearing officer adjudicating plaintiff's RVR noted the tension between this description and the

2  prison regulations that prohibit law clerks from providing legal advocacy while on duty.  (Pl.'s

3  Decl. Supp. Opp. Mot., App. I.)  The very nature of plaintiff's confusing job description, along

4  with his history of receiving only warnings when told on prior occasions about the regulation

5  prohibiting advocacy, creates a genuine issue as to the motivation behind defendant's conduct

6  that can only be decided by a finder of fact.

7            In addition, plaintiff asserted that he was told by personnel in the prison and

8  employees in the law library that defendant intended to punish him for filing his grievance.  (Pl.'s

9  Decl. Supp. Opp. Mot. 26.)  It is undisputed that defendant filed the classification report

10  requesting that plaintiff be removed from his position in the law library.  (Pl.'s Decl. Supp. Opp.

11  Mot., App. I.)  The classification report cites to the RVR that was also completed by defendant,

12  and included the CDC 602 as an attachment.  Id.

13            In spite of defendant's request to remove plaintiff from his position as a law clerk,

14  the classification committee returned plaintiff to the library on May 22, 2001.  (Pl.'s Decl. Supp.

15  Opp. Mot., App. O.)  Plaintiff presented evidence that defendant became upset upon learning that

16  plaintiff had returned to the library and that he was subsequently ordered to return to his cell.

17  (Pl.'s Decl. Supp. Opp. Mot. 26.)  Two weeks later, plaintiff was removed and placed in

18  administrative segregation, along with the rest of the staff as a result of weapons that were found

19  in the library.  (Def.'s Mot. Summ. J. App. H.)  After it was determined that there was

20  insufficient evidence to support any charge against plaintiff based on the weapons violation,

21  (Pl.'s Decl. Supp. Opp. Mot., App. W.), plaintiff did not return to his job, but rather, remained on

22  administrative segregation pending an investigation into familiar behavior with a staff member.

23  Id.  On August 31, 2001, this charge was also found to be not substantiated.  Id.

24            In spite of these facts, plaintiff was not permitted to return to his former position

25  in the law library.  However, plaintiff has provided some evidence that fellow clerks were

26  permitted to return to their former jobs.  (Pl.'s Decl. Supp. Opp. Mot. 31.)  In addition, there is

10

some evidence of statements by prison personnel that defendant raised the unsubstantiated claim of familiar behavior. (Pl.'s Decl. Supp. Opp. Mot. 27.) Assuming all of these facts in favor of the nonmoving party, such allegations raise triable issues about the basis of plaintiff's RVR and the loss of his employment in the law library. See Bruce, 351 F.3d at 1289.

Defendant argues that the RVR and classification review were filed because of actions admitted to in the CDC 602, not for the act of filing the appeal. While such an argument may ultimately bear fruit at trial, a logical inference can be drawn from the near simultaneous nature of the reporting of the appeal to defendant and her filing of the RVR, that the two incidents are connected. The same inference can be drawn from plaintiff's return to the library and subsequent removal only two weeks later. The simple fact that defendant took action in a forum separate from that in which lodged his initial complaint does not insulate that action from scrutiny.

Defendant's contention that finding a retaliatory motive when admissions discovered in a CDC 602 appeal are used as the basis for an RVR will shield inmates from punishment is unavailing. The critical inquiry under the relevant analysis is the purpose for the action. Purpose is determined by the finder of fact based upon all of the evidence in the record, including the ultimate action taken, surrounding circumstances, and timing, not just the source of the information about the rules violation.

When viewed in the light most favorable to the non-moving party, plaintiff has offered proof to demonstrate an improper motive for the actions taken by defendant. The timing of the adverse actions, the confusing nature of plaintiff's job description, statements made by fellow employees and prison staff about the reasons for the disciplinary action, and subsequent hiring decisions in the law library, are all some proof of retaliation. In this case, plaintiff has provided sufficient evidence of the circumstances surrounding the adverse actions taken against him to show that a genuine issue of fact exists with regards to the motives behind defendant's actions.

1                iii.  Prisoner's Protected Conduct

2                Defendant concedes that the filing of a prison grievance is a constitutionally

3  protected activity.  (Def.'s Mot. Summ. J. 7.)

4                iv.  Chilled Exercise of First Amendment Rights

5                Plaintiff has filed numerous grievances since receiving his RVR and losing his job

6  in the B-facility law library.  According to defendant, plaintiff's vigorous utilization of his

7  administrative grievance procedure is evidence that plaintiff' speech has not been chilled by any

8  government conduct.  This argument is without merit.

9                An inmate need not prove a total chilling of their protected speech in order to

10  pursue a retaliation claim.  <u>Rhodes</u>, 408 F.3d at 568.  The proper test for determining whether

11  official acts chill or silence speech is to ask whether "a person of ordinary firmness" would be

12  intimidated from future First Amendment activities.  <u>Mendocino Environmental Center v.</u>

13  <u>Mendocino County</u>, 192 F.3d 1283, 1300 (9thCir. 1999).  There is no requirement that one

14  demonstrate that their speech was actually inhibited or suppressed.  <u>Id.</u>  Plaintiff has raised a

15  credible allegation of a chilling effect as a result of defendant's conduct that is sufficient to create

16  a genuine issue of material fact.

17                v.  Legitimate Penological Goal

18                The prisoner bears the burden of pleading and proving the absence of legitimate

19  penological goals for the complained of conduct.  <u>Pratt</u>, 65 F.3d at 806.  Plaintiff has done so in

20  this case.  There is sufficient evidence of improper motivation, questionable timing, and targeted

21  action to support plaintiff's allegations regarding a lack of penological purpose.

22                Defendant argues that the need to comply with prison regulations and prison

23  safety precipitated the RVR, administrative segregation, and loss of employment.  In light of the

24  evidence of retaliation offered by plaintiff, this argument is unavailing.  "[P]rison officials may

25  not defeat a retaliation claim on summary judgment simply by articulating a general justification

26  for a neutral process when there is a genuine issue of material fact as the whether the action was

1  taken in retaliation for the exercise of a constitutional right." Bruce, 351 F.3d at 1289.  Such

2  genuine issues exist in this case.

3         Defendant argues that plaintiff was placed in administrative segregation and

4  removed from his job as a law clerk because of evidence unrelated to his CDC 602 appeal.

5  While plaintiff may have ultimately ended up where he belonged, if he arrived there as a result of

6  improper retaliation, it cannot be said that any legitimate penological goal is being served.  Bruce

7  351 F.3d at 1289; see also Rizzo v. Dawson, 778 F.2d 527, 532 (9thCir. 1985)("[P]laintiff has

8  alleged that [prison officials' actions] were retaliatory and were arbitrary and capricious.  He has

9  thereby sufficiently alleged that the retaliatory acts were not a reasonable exercise of prison

10 authority and that they did not serve any legitimate correctional goal.")  While neutral reasons

11 may support the adverse action taken against plaintiff, he has raised sufficient evidence of

12 retaliation.  Deducing the true motivation behind such actions is best left to the finder of fact.

13         c.  Qualified Immunity

14         Defendant argues that she has qualified immunity from suit.  This argument is

15 without merit.  Plaintiff has establish sufficient factual issues to preclude any application of

16 qualified immunity.

17         Analyzing a claim of qualified immunity requires the court to determine what

18 right has been violated, whether the right was clearly established so that a reasonable official

19 would have been aware that her conduct violated constitutional bounds, and whether a reasonable

20 public official could have believed that her conduct was lawful.  See Newell v. Sauser, 79 F.3d

21 115, 117 (9th Cir. 1996).  As shown above, plaintiff has demonstrated that material issues of fact

22 exist with regards to the constitutionality of defendant's behavior.  Plaintiff has put forth a valid

23 claim that his First Amendment right was violated by defendant's retaliatory behavior.

24         Furthermore, defendant cannot argue that the right was not clearly established.  For

25 purposes of qualified immunity, the prohibition against retaliatory punishment is clearly

26 /////

1  established law in the Ninth Circuit.  Hydrick v. Hunter, 449 F.3d 978, 994 (9thCir. 2006); Pratt

2  v. Rowland, 65 F.3d 802, 806 & n.4 (9thCir. 1995).

3         Similarly, defendant has no basis upon which to argue that she believed her actions

4  as alleged were lawful.  A reasonable prison official can believe their adverse action is lawful if it

5  was in support of a legitimate penological goal and the means were narrowly tailored to achieve

6  that goal.  Schroeder v. McDonald, 55 F.3d 454, 461 (9thCir. 1995).  Legitimate penological goals

7  advanced by defendant include protection from liability, the preservation of order within the

8  prison, maintenance of internal discipline, and security.  However, given the fact that plaintiff's

9  right to be free from retaliation is clearly established, the immunity defense should ordinarily fail.

10 Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  A

11 reasonable public official should know the law governing their conduct.  Id.

12        The facts in this case do not support a deviation from this general proposition.

13 Plaintiff has presented evidence of a retaliatory motive for defendant's behavior.  Couching that

14 motive in otherwise legitimate penological goals does not infuse it with the protections of

15 qualified immunity.

16     B. Conclusion

17        Plaintiff presented evidence that defendant retaliated against him because of his

18 exercise of rights protected under the Constitution.  Defendant counters that her actions were a

19 valid application of her authority that was necessary to support the legitimate penological goals of

20 CSP-Sacramento.  There are genuine issues of material fact in this case that can only be resolved

21 by a judge or jury.  Defendants have not demonstrated that they are entitled to judgment as a

22 matter of law.

23        Accordingly,  IT IS HEREBY RECOMMENDED that defendants' summary

24 judgment motion be denied.

25        These findings and recommendations are submitted to the United States District

26 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten

14

(10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 16, 2006.

UNITED STATES MAGISTRATE JUDGE

13/1983
Martin.0466.pris.msj.wpd